UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSE DAVILA,                          )
                                      )
          Plaintiff,                  )
                                      )
          v.                          )   C.A. No.  04-12637-RGS
                                      )
KATHLEEN DENNEHY, Commissioner,  )
Department of Corrections, et al.,    )
                                      )
          Defendants.                 )

MEMORANDUM AND ORDER

 For the reasons stated herein the Plaintiff is directed to

show cause, within forty-two (42) days of the date of this

Order why this action should not be dismissed, or in the

alternative or in addition to, Plaintiff may file an amended

complaint in accordance with this Memorandum and Order, within

that forty-two (42) day period.


BACKGROUND

    On December 8, 2004, Plaintiff Jose Davila, a prisoner at

MCI Cedar Junction, Walpole, MA, filed his self-prepared *pro

se* civil rights complaint under 42 U.S.C. §1983, seeking

declaratory and injunctive relief, as well as monetary damages

for Eighth Amendment violations involving the administration

1

of psych-medications "Zyprexa"[1] and "Risperdal" which he

alleges produced early onset diabetes.

Plaintiff has sued Kathleen Dennehy and Michael Maloney,

the Commissioner and former Commissioner of Corrections, both

in their individual and official capacities. Additional named

defendants are Herbert Hershkowitz, M.D., Patricia Croft,

M.D., and Ernest Osei-Tutu, medical director of the Mass.

prison system[2]. These defendants are alleged to be employed

by U-Mass Medical Department, and are sued in their individual

and official capacities. Plaintiff also seeks to sue the

directors of the U-Mass. Medical Department and the Department

of Corrections Mental Health Department, as well as the

"President" of Eli Lilly and Co., and the "Director" of the

Food and Drug Administration, and states that "additional

defendants forthcoming."

Since 1997, Plaintiff has been serving a life sentence.

He claims that in his childhood he was diagnosed with Bi-polar

---

[1]Zyprexa has been used for schizophrenia and for bi-polar disorder. Plaintiff's medical records submitted with his complaint reference post traumatic stress disorder, personality disorder, self-mutilation, and gang-activity.

[2]Defendant doctors, who may be private physicians but who are under contract with a state prison to provide medical care to inmates, may properly be sued as state actors under §1983. Brown v. Ionescu, 2004 WL 2101962, at *3 (S.D.N.Y. September 21, 2004), citing West v. Atkins, 482 U.S. 42 (1988).

disorder, and has been seen by numerous "psych-counselors" and doctors under the mental health department (Complaint, ¶¶ 1, 2). He has been prescribed numerous medications, including Zyprexa and Risperdal, which he was prescribed from September 2001 to June 2004[3] (Complaint, ¶¶3, 7). He claims medical studies have shown these drugs can produce early onset diabetes and severe hyperglycemia and death (Complaint, ¶4). He asserts defendant Doctors Hershkowtz and Croft knew or should have known of the diabetes side effects (Complaint, ¶7). In October 2002, Plaintiff was diagnosed with "diabetes mellitus" by defendant Dr. Tutu, who then prescribed insulin shots (Complaint, ¶10). Plaintiff claims it was later determined that he was not a diabetic, but that "he only had a high glucose reading temporary [sic] that day, but yet Tutu prescribe [sic] the insulin shots that almost killed him." (Complaint, ¶12). Plaintiff claims that if Tutu had discontinued the two medications, Zyprexa and Risperdal, he would not have had to have painful insulin shots (Complaint, ¶13). Plaintiff further contends that both directors of U-Mass and Mental Health Departments failed to supervise the

_____

[3]Plaintiff has not sought emergency injunctive relief, presumably because he indicates he has not been prescribed the disputed medication since June 2004.  In any event, in view of the Memorandum and Order, no temporary emergency injunctive relief shall be ordered.

named doctor defendants in prescribing certain medications (Complaint, ¶14). He further claims Commissioners Dennehy and Maloney were the overseers of both medical departments, had meetings together with respect to care and custody of prisoners, and failed their responsibilities. Plaintiff states he has developed extreme emotional distress and has become diabetic as a result of these two drugs, and he seeks declaratory and injunctive relief, as well as $100,000 in compensatory damages and $50,000 from each defendant.

Attached to Plaintiff's complaint are several newspaper articles linking Zyprexa with early onset diabetes or hyperglycemia, as well as Eli Lilly safety warnings. Also attached are copies of Plaintiff's "medical file", and a letter from counsel for Dr. Tutu to the Board of Registration in Medicine, denying the complaint filed by Plaintiff against Dr. Tutu.

Plaintiff does not allege that he has exhausted administrative remedies within the prison system.

## ANALYSIS

### I.  Plaintiff's Complaint is Subject to Screening

Because Plaintiff is a prisoner, his action is subject to the provisions of the Prison Litigation Reform Act. The

Prison Litigation Reform Act of 1995 ("PLRA"), Title VIII of Pub.L. 104-134, 110 Stat. 1321-1375 (1996), enacted several provisions which grant this Court the authority to screen and dismiss prisoner complaints. <u>See</u> 28 U.S.C. §1915 (proceedings *in forma pauperis*); 28 U.S.C. §1915A (screening of suits against governmental officers and entities).

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. <u>See</u> 28 U.S.C. §1915(e)(2). *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under §1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless. <u>Id.</u>; <u>Denton v. Hernandez</u>, 504 U.S. 25, 32-33 (1992).

Section 1915A authorizes the Court to review prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if it lacks an arguable

basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief.  28 U.S.C. §1915A.

Even construing his pleadings generously, <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972), Plaintiff's action is subject to dismissal for the reasons stated below.

II.     <u>Plaintiff's Complaint is Subject to Dismissal under 42 U.S.C. §1997e for failure to exhaust Administrative Remedies</u>

Title 42 U.S.C. §1997e(a) provides that no action shall be brought with respect to "prison conditions" under §1983 by a prisoner "until such administrative remedies as available are exhausted."  42 U.S.C. §1997e(a).  Prison conditions, for purposes of §1997e(a), have been broadly interpreted to include "all inmate suits about prison life."  <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). Thus, plaintiff's claims about his lack of proper medical treatment by harmful medication involve "prison conditions" and are subject to the exhaustion of remedies requirement.  <u>See</u> <u>id.</u>; <u>accord</u> <u>Menina-Claudio v. Rodriguez-Mateo</u>, 292 F.3d 31, 34 (1st Cir. 2002).

Here, Plaintiff has not provided information demonstrating that he has exhausted grievance procedures within the prison.    The fact that he seeks injunctive relief is insufficient to overcome the exhaustion requirement.  <u>See</u> <u>Booth v. Churner</u>, 532 U.S. 731, 740 (2001) (a prisoner

6

must exhaust all available administrative processes regardless of the relief offered through those procedures); <u>accord</u> <u>Menina-Claudio</u>, 292 F.3d 31, 35 (1st Cir. 2002)(no futility exception to the exhaustion requirement); <u>cf.</u> <u>Casanova v.</u> <u>Dubois</u>, 289 F.3d 142, 147 (1st Cir. 2002) (citation omitted) (although the exhaustion requirement is not jurisdictional, it is mandatory). The failure to exhaust stands as an adequate grounds to dismiss this action.

However, because a Court is also free to dismiss claims for failure to state a claim under §1997e(c)(2), without first requiring exhaustion of administrative remedies, Plaintiff is advised that his claims are subject to dismissal on the merits, and he is directed to demonstrate good cause why they should not be dismissed on the merits. <u>See</u> 42 U.S.C. §1997e(c)(2).

III. <u>Plaintiff's claims against directors of U-Mass. Medical Department and Mass. Mental Health Department, and the claims for damages against Kathleen Dennehy and Michael Maloney in their official capacity are subject to dismissal, since there is no vicarious liability under §1983.</u>

Plaintiff names the defendant directors of both the U-Mass. Medical Department and Mass. Mental Health Department, alleging failure to supervise the doctors with respect to prescribing medications. Similarly, Plaintiff names the

Commissioner and former Commissioner of Corrections, alleging
they were the "overseers" of both medical departments. Other
than these bald assertions, no specific factual information
with respect to their actions or inactions is provided.

To the extent these claims raise *respondeat superior*
liability, it is well-settled that there is no vicarious
liability under §1983. <u>Pinto v. Nettleship</u>, 737 F.2d 130, 132
(1st Cir. 1984) (no *respondeat superior* liability under §1983;
liability can only be imposed upon officials who were involved
personally in the deprivation of constitutional rights); <u>see</u>
<u>Guzman v. City of Cranston</u>, 812 F.2d 24, 26 (1st Cir. 1987).
Moreover, since Plaintiff has not specified with any factual
detail, any personal involvement by those defendant entities
in the alleged deprivation of rights, the claims against those
defendants are subject to dismissal.

    IV. <u>Eleventh Amendment immunity</u>

The Eleventh Amendment confers immunity from suit upon
state officials when "the state is the real substantial party
in interest," that is, when "the judgment sought would expend
itself on the public treasury ..., or interfere with the
public administration...." <u>Pennhurst State Sch. & Hosp. v.</u>
<u>Halderman</u>, 465 U.S. 89, 101-102, n. 11 (1984) (citations
omitted); <u>accord</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991) (same).

Therefore, to the extent that plaintiff has named the defendants Kathleen Dennehy and Michael Maloney in their official capacity as Commissioner and former Commissioner of Corrections, the Eleventh Amendment bars relief and those claims against defendants in their official capacities are subject to dismissal. <u>Pennhurst</u>, 465 U.S. at 101-102 (stating that "as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief."); <u>accord</u> <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989) (although state officials are literally persons, a suit against a state official in his official capacity is not a suit against the official but rather is a suit against the official's office).

V.    <u>The claims against the President of Eli Lilly and Co. and the Director of the Food and Drug Administration are subject to dismissal.</u>

Plaintiff's claims against the President of the drug company, Eli Lilly and Co., and the Director of the Food and Drug Administration in both their individual and official capacities, because they "are relevant to this action" are subject to dismissal, for failure to comply with Fed. R. Civ. P. 8(a).

9

Rule 8(a) of the Federal Rules of Civil Procedure
requires a plaintiff to include in his complaint, inter alia,
"a short and plain statement of the claim showing that the
pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).
This standard sets forth a relatively low pleading threshold,
and generally, a court may dismiss a complaint only if it is
clear that no relief could be granted under any set of facts
that could be proved consistent with the allegations contained
in the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506,
514 (2002).

Here, Plaintiff merely alleges that these defendants are
"relevant" but provides no factual or legal support whatsoever
to state a valid §1983 cause of action, and plaintiff's
complaint fails to meet even this low threshold. Merely
attaching medical records and newspaper articles to the
complaint is insufficient for Plaintiff to set forth the
claim. Moreover, there is no state action alleged with respect
to Eli Lilly and Company, a requirement under §1983.

Notwithstanding the above, Plaintiff's allegations that
these defendants knew or should have known that Zyprexa and
Risperdal were dangerous and that they should have either
removed them from the market or provided timely safety
warnings could raise toxic tort/product liability claims

10

involving claims of negligence, strict liability, breach of implied warranty or fraud see, e.g., McClamrock v. Eli Lilly and Company, 267 F. Supp. 2d 33 (D.D.C. 2003), however, Plaintiff has failed to plead this in accordance with Rule 8(a).  Should Plaintiff articulate a claim(s) against Eli Lilly and Company, this Court would appear to have diversity jurisdiction over such claims under 28 U.S.C. §1332(a)(1) since Eli Lilly and Company appears to be a citizen of the State of Indianna, and Plaintiff's damages claims exceed the threshold monetary prerequisite.

With respect to defendant Director of the Food and Drug Administration, it is well-settled that the United States can be sued only to the extent that it has waived its sovereign immunity. United States v. Testan, 424 U.S. 392 (1976).  Under the doctrine of sovereign immunity, the United States (through its various branches and departments) enjoys immunity from suit except in those instances in which it has expressly consented to be sued.  In this case, the Federal Tort Claims Act (FTCA) provides for a waiver of sovereign immunity for damages caused by ingestion or use of medications approved by the government. See 28 U.S.C. §§1346, 2680.  However, courts have found applicable the "discretionary function" exception provided in 28 U.S.C. §2680(a), which exempts from the waiver

11

any governmental liability for claims based on discretionary acts or omissions by government employees. See 14 Charles Alan Wright & Arthur R. Miller: Federal Practice and Procedure § 3658.1 (2d ed. 1998). See e.g., Bailey v. Eli Lilly Co., Inc., 607 F. Supp. 660, 662 (M.D. Pa. 1985). This "discretionary function" exception has generally been asserted as a defense and the burden of proving applicability falls upon the government. See 14 Charles Alan Wright & Arthur R. Miller, supra, at 1. Therefore, should Plaintiff articulate a claim under the FTCA, this Court would appear to have subject matter jurisdiction over such claim, notwithstanding that the claim may be subject to dismissal at a later time.

VI.  Due Process and The Eighth Amendment

A.  Due Process Claims

Although not specifically alleged by the Plaintiff here[4], to the extent Plaintiff asserts, if at all, he was forcibly medicated with Zyprexa and Risperdal against his will, due process considerations arise. Generally, "[a] competent adult has the right to refuse medical treatment." Roberson v. Goodman, 296 F. Supp. 2d 1051, 1054-55 (D.N.D.

_____

[4]There is some indication in the medical records that Plaintiff had refused to take Zyprexa, although Plaintiff does not expressly state that the medication was given to him against his will.

12

2003), *order affirmed by* <u>Roberson v. Goodman</u>, 2004 WL 2828940
(8th Cir. (Dec. 10, 2004)). <u>See also</u> <u>Washington v. Glucksberg</u>,
521 U.S. 702, 720 (1997); <u>Cruzan v. Director, Missouri Dept.</u>
<u>of Health</u>, 497 U.S. 261 (1990); <u>Commissioner of Correction v.</u>
<u>Myers</u>, 379 Mass. 255 (D. Mass. 1979). This right has been
deemed to be derived either under common-law right to
determine what may be done with one's own body, under the
doctrine of informed consent, or under both a common-law and
constitutional right to privacy. <u>Roberson</u>, 296 F. Supp. 2d at
1055. This right, however, is not absolute. <u>Id</u>.

In the prison setting, an inmate's rights to refuse
medical treatment, including refusing anti-psychotic drugs,
are weighed against the state's interest in orderly prison
administration, and in providing a safe and secure prison
environment. <u>Id</u>.; <u>Washington v. Harper</u>, 494 U.S. 210, 223
(1990). Due process required that before an inmate could be
involuntarily medicated, he had the right to be present, and
to call and cross examine witnesses at an adversary hearing.
<u>Id</u>., <u>citing</u> <u>Harper</u>, 494 U.S. at 232-36.

Here, it is impossible to determine whether Plaintiff may
maintain a due process challenge since he has not clearly pled
that he actually refused the medication and was forced to take
it against his will, nor has he provided any information

whether he sought to have such a hearing. Accordingly, to the extent Plaintiff asserts this, this claim is subject to dismissal.

    B.  <u>The Eighth Amendment claims</u>

    Plaintiff alleges cruel and unusual punishment in violation of the Eighth Amendment. In the prison context, when an inmate alleges that prison officials violated his Eighth Amendment rights, the inmate "must prove that the defendants' actions amounted to "deliberate indifference to a serious medical need."" <u>DesRosiers v. Moran</u>, 949 F.2d 15, 18 (1st Cir. 1991) <u>citing</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>See also</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). Deliberate indifference has been defined as "conduct that offends evolving standards of decency in a civilized society." <u>DesRosiers</u>, 949 F.2d at 18, <u>citing</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981), <u>Estelle</u>, 429 U.S. at 102-03.  In evaluating whether a deprivation constitutes "deliberate indifference," courts have looked to both objective and subjective components. <u>See</u>, <u>Id</u>.  Objectively, there needs to be a "serious" deprivation. Subjectively, the deprivation must have been "brought about in wanton disregard of the inmate's rights." <u>Id</u>. <u>citing</u> <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991). In evaluating the quality of medical care in prison, practical

14

constraints facing prison officials must be considered.

DesRosiers, 949 F.2d at 19. "...[I]nadvertent failures to

provide medical care, even if negligent, do not sink to the

level of deliberate indifference." Id. citing Whitley v.

Albers, 475 U.S. 312, 319 (1986) (other citations omitted).


As to the first prong of the test, Plaintiff must set

forth the claim involves a "serious medical need."  A

"serious" medical need is one which involves a substantial

risk of serious harm if it is not adequately treated. Kosilek

v. Maloney, 221 F. Supp. 2d 156, 160 (D. Mass. 2002).

Typically, it is a need that has been diagnosed by a physician

as mandating treatment or one that is so obvious that even a

lay person would easily recognize the necessity for a doctor's

attention.  Gaudreault v. Municipality of Salem, 923 F.2d 203,

208 (1st Cir. 1990).

Here, although Plaintiff alleges he has developed a

serious medical condition (diabetes) from use of dangerous

medication, he has not pointed to any medically competent

evidence to support the causation allegations. A self-

diagnosis is insufficient to raise an Eighth Amendment

violation.  Roberson, 293 F. Supp. 2d at 1081.  Expert

testimony or some form of medical evidence is necessary to

link the contested medical treatment with the alleged injuries[5]. Id.   However, insofar as this question of causation raises a factual question of proof, I do not find this to be a basis for dismissal at this time.

However, Plaintiff has failed to establish the second the second prong, to show that prison officials and employee doctors acted with "deliberate indifference" to those serious medical needs.  While Plaintiff may have been prescribed medication in contravention to the existing medical literature concerning the Zyprexa and Risperdal, a showing of deliberate indifference requires more than mere inadvertent, negligent, or even grossly negligent failure to provide medical care. See Farmer v. Brennan, 511 U.S. 825 (1994).  Such failures do not rise to the level of an Eighth Amendment violation. Estelle, 429 U.S. at 105. Additionally, medical malpractice claims are insufficient to establish an Eighth Amendment violation. Estelle, 429 U.S. at 104; Roberson v. Goodman, 293 F. Supp. 2d 1075, 1080 (D.N.D. 2003) Order affirmed by Roberson v. Goodman, 2004 WL 2828940 (8th Cir. (Dec. 10,

---

[5]This causation element has typically been raised by defendants in the summary judgment context. While I will not consider this as a basis to summarily dismiss this action, I question, without deciding the issue, whether the newspaper articles submitted by the Plaintiff would, standing alone, provide a sufficient nexus.

2004)).

In his complaint, Plaintiff states no specific factual allegations with respect to the defendant doctors, apart from the treating physician, Dr. Tutu. Plaintiff's allegations against Dr. Tutu, if taken as true, may raise medical malpractice claims against the treating doctor based on mis-diagnosis and treatment of Plaintiff as a diabetic, when he was only temporarily hyperglycemic and not in need of insulin shots, or in prescribing harmful medication which allegedly caused early onset diabetes.  However, there is no indication on this record that Dr. Tutu, or any of the defendants for that matter, knew or should have known that the medication prescribed would have an adverse effect on the Plaintiff, or that any of the defendants acted with deliberate indifference to the Plaintiff's medical needs[6].  What is at issue here is

---

[6]Because Plaintiff has not raised valid federal claims at this time, grounds do not exist for subject-matter jurisdiction over a malpractice claim against any physician. In the absence of such jurisdiction, the Court may still exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(a).  The exercise of such jurisdiction, however, is discretionary, United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966), and a federal court may decline to exercise supplemental jurisdiction over a plaintiff's state law claims when the federal claims drop out of the action before trial.  Martinez v. Colon, 54 F.3d 980, 990 (1st Cir. 1995) (dismissal of state claim appropriate when no "legitimate" federal question remained in advance of trial); accord Rose v. Baystate Med. Ctr., Inc., 985 F. Supp.

not the deprivation of treatment, but the type of treatment. "Disagreements over medications, diagnostic techniques...[and] forms of treatment...are not adequate grounds for a §1983 claim.  These issues implicate medical judgments, and, at worst, negligence amounting to malpractice, but not the Eighth Amendment." <u>Brown</u>, 2004 WL 2101962 at *4 (finding no Eighth Amendment violation in doctor's surgical placement of ureteral stent in inmate over his objection; however Fourteenth Amendment claim for unwanted medical treatment implicated)[7].

Accordingly, for the reasons stated above, Plaintiff's claims are subject to dismissal.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff is hereby ORDERED to show cause, within forty-two (42) days of the date of this order why this action should not be dismissed for the reasons stated herein. In addition to or in lieu of a show cause response, Plaintiff may, within the forty-two (42) day time

---

211, 218-219 (D. Mass. 1997). I decline to exercise jurisdiction here.

[7]I need not address the question whether the physicians are entitled to qualified immunity. <u>See,</u> <u>Brown</u>, 2004 WL 2101962 at *6-7 (doctor may be shielded from liability for civil damages despite constitutionally impermissible conduct if it was objectively reasonable to believe actions did not violate those rights).

period, file a separate document entitled Amended Complaint,

in accordance with the directives of this Memorandum and

Order.

Dated at Boston, Massachusetts, this 5th day of January, 2005.

/s/ Richard G. Stearns
RICHARD G. STEARNS
UNITED STATES DISTRICT JUDGE